IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Dwayne C. Petty, :

    Plaintiff, :

  v. :     Case No. 2:08-cv-625

Michael J. Astrue, :     JUDGE FROST
Commissioner of Social Security,     MAGISTRATE JUDGE KEMP
    :
    Defendant.

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff, Dwayne C. Petty, filed this action seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability benefits and supplemental security income. Those applications, which were filed on January 21, 2005, alleged that plaintiff became disabled on January 31, 2003, as a result of gout, a bullet in his chest, illiteracy and inability to write.

After initial administrative denials of his claim, plaintiff was afforded a hearing before an Administrative Law Judge on January 24, 2007. In a decision dated March 16, 2007, the Administrative Law Judge denied benefits. That decision became the final decision of the Commissioner when the Appeals Council denied review on April 29, 2008.

Plaintiff thereafter timely commenced this civil action. The record of administrative proceedings was filed in this Court on September 3, 2008. Plaintiff filed a statement of errors on November 7, 2008, to which the Commissioner responded on February 9, 2009. Plaintiff filed a reply brief to the Commissioner's Memorandum in Opposition on February 19, 2009. The action is now ripe for decision.

## II. Plaintiff's Testimony

Plaintiff's testimony at the administrative hearing revealed the following. Plaintiff, who was 52 at the time of the administrative hearing, completed the seventh grade and was in special education classes. (Tr. 221, 223, 247). Plaintiff stated that he previously worked as an auto detailer, but stopped working because the company went out of business. (Tr. 226). He also worked for a landscaping business. Id.

Plaintiff testified that his inability to work is from dizziness due to high blood pressure and numbness in his feet due to diabetes. (Tr. 239-40). He also has gout. (Tr. 240, 264). Walking causes shortness of breath. He has used a breathing machine since 2006, but does not use an inhaler. (Tr. 242-43). He complained of chest pain, but does not use nitroglycerin. (Tr. 243-44). Plaintiff also complained of low back pain for many years. Id. His right knee reportedly gives out with extended standing, but he does not use a cane or brace. (Tr. 245). He rated his pain at a 5/6 out of 10 at the time of the hearing, but stated that he had taken his medication that day. (Tr. 249). His pain is aggravated by cold air and rain. (Tr. 250). He noted no side effects from his medication. (Tr. 251).

Plaintiff further testified as to depression and difficulty sleeping which has been occurring for about three years since the death of his mother and sister. (Tr. 247-48). He stated he currently consumes about 40 ounces of alcohol a week. (Tr. 246). He has used cocaine in the past, but not since 2004. (Tr. 247).

Plaintiff believed that he can follow simple work rules, relate to co-workers, deal with the public and interact with supervisors. (Tr. 251-52).

On a daily basis, he watches television most of the day, but stated he has difficulty concentrating on the shows. (Tr. 253-54, 262). He can cook and vacuum, but does not do laundry or

shopping. (Tr. 260). He attends church or social gatherings two to three times a week. (Tr. 262). He depends on his family to help him remember appointments, pay bills, and maintain personal appearance. (Tr. 253-55).

Plaintiff stated he needs to rest after walking a half-block due to shortness of breath. (Tr. 256-57). He can sit for 30-60 minutes before needing to change position. (Tr. 257). He becomes short of breath after climbing four steps. He estimated that he could lift approximately 18 pounds. (Tr. 258). He is unable to read or write even simple messages. (Tr. 260).

### III. The Medical Records

Pertinent medical and educational records reveal the following. School records from 1966 reflect that, when Plaintiff was in the fourth grade, he achieved an IQ score of 72. (Tr. 119).

Dr. Setnar evaluated plaintiff on December 9, 2003. Plaintiff told Dr. Setnar that he could not read or write, went to school until the sixth or seventh grade and was in special education classes. During the examination, plaintiff was pleasant, cooperative, and oriented. Examination revealed his lungs were clear to auscultation and percussion and were well ventilated bilaterally with no rales, wheezing, or rhonchi. Muscle strength was within normal limits. His gait was antalgic secondary to bilateral foot pain, but he was able to bear weight on his feet and did not require ambulatory aids. He was able to grasp and manipulate with each hand. There was no evidence of peripheral vascular disease. He had a full range of motion in the dorsolumbar spine. He was unable to go from a sitting to standing position with his arms crossed. X-rays of the right knee revealed mild medial joint space narrowing. (Tr. 123). A chest x-ray showed only minimal left lateral basilar atelectasis/atelectatic densities. (Tr. 124). Plaintiff had a

suspended driver's license and used public transportation. Dr. Setnar diagnosed Plaintiff with painful neuropathy of the left extremities specifically the feet which has been present for the last year and progressive in nature. The etiology was undetermined but alcoholism and diabetes were considerations. Plaintiff also suffered from chronic bilateral knee pain of uncertain etiology and duration. Plaintiff had an abnormal MMT with normal range of motion. Dr. Setnar also noted that plaintiff was functionally illiterate. Plaintiff also suffered from chronic non specific exertional dyspnea of 3-4 years' duration. Dr. Setnar attributed this to a bullet wound in the mouth at age 17 that landed in his "chest" and is "still there." Dr. Setnar opined that plaintiff was unable to do work related physical activities eight hours per day, five days per week as a result of moderate to severe painful neuropathy of the feet and to a lesser degree bilateral knee pain and exertional dyspnea. Plaintiff was specifically limited from standing more than 5 minutes, lifting and carrying more than 25 pounds, climbing, and walking more than one-half block. Plaintiff was unable to follow written instructions or respond well to work pressures because of his illiteracy. (Tr. 120-29).

Plaintiff was examined by Dr. Woskobnick on March 24, 2005. Dr. Woskobnick noted that plaintiff walked with an antalgic gait favoring his left lower extremity. Peripheral pulses were 2/4 bilaterally. He had deceased flexion of the knees. Range of motion of the dorsolumbar spine showed 70 degrees of flexion, 10 degrees extension, and 25 degrees lateral flexion. He was unable to do a deep knee bend because of his 1eft knee pain and back pain. He was unable to do toes, heel, and tandem walk. Deep tendon reflexes were 2/4 bilaterally of the upper and lower extremities. Dr. Woskobnick opined that Plaintiff could stand and walk one hour at a time as long as he could rest for 15 minutes,

up to eight hours a day.  He could lift 20 pounds intermittently.
He could sit for eight hours a day as long as he could get up for
15 minutes every two hours and stretch.  His ability to climb,
balance, stoop, crouch, kneel, and crawl was restricted due to
left knee and back pain.  Physical functions of reaching,
handling, and pushing would not be impaired as long as the weight
restriction was not exceeded. (Tr. 130-36).

    Plaintiff underwent a psychological evaluation which was
performed by Dr. Virgil on April 7, 2005.  Plaintiff told Dr.
Virgil that he was illiterate and could not read or write.  He
stated that he completed the sixth grade and did not know why he
left school.  Plaintiff initially stated that he did not know why
he was not working, but then replied that his knees were bad and
his feet hurt in the morning.  Plaintiff reported sleep
difficulties, crying spells, paranoid ideation, and occasional
suicidal ideation.  He gave a past history of alcohol and cocaine
abuse, and admitted daily alcohol use, but denied cocaine use
over the past three years.  He could not count backward from 20
to 1, recite the alphabet, or count by threes from 1 to 40.
Remote and recent memory appeared to be grossly intact.  He
recalled four digits forward and three backwards, which was
within the borderline range.  On reading testing, he was able to
identify some letters, but could not read any words and could not
respond correctly to any of the early test items.  Dr. Virgil
observed that plaintiff was only marginally cooperative and
offered minimal responses to inquiry or did not answer at all.
Plaintiff's effort level on tasks presented to him was minimal to
nonexistent and he probably malingered.  Dr. Virgil administered
IQ testing which resulted in a verbal IQ of 62, a performance IQ
of 54, and a full scale IQ of 54.  Dr. Virgil considered this a
low estimate, considering plaintiff's lack of effort, possible
malingering, and overall clinical presentation.  Actual

functioning was estimated to be at least within the mild level of mental retardation.  Dr. Virgil diagnosed alcohol abuse, depressive disorder NOS, bereavement, estimated mild mental retardation, and personality disorder NOS.  Plaintiff was assigned a global assessment of functioning (GAF) at 52.  Dr. Virgil concluded that Plaintiff could perform unskilled work activity in a work environment with minimal social interaction demands and would be able to cooperate with supervisors and co-workers in a work setting commensurate with his ability level.  He was felt to have a marked impairment with respect to following repetitive tasks requiring close attention and concentration.  (Tr. 138-43).

In August 2005, plaintiff was hospitalized at Grant Medical Center due to pneumonia.  Follow-up examination at the hospital's out-patient clinic on November 10, 2005, revealed plaintiff had a persistent cough.  His lungs were clear to auscultation without rales.  His heart was regular with no audible murmurs and no audible third heart sounds, although heart sounds were moderately distant.  Plaintiff was diagnosed with congestive heart failure, recent onset, probably secondary to hypertensive cardiovascular disease, type 2 diabetes, new onset, hypertension, and a social problem of not being able to pay for his medications. (Tr. 190-93).

X-rays of the lumbar spine taken November 22, 2005, revealed generalized lumbar spinal canal stenosis and spondylosis.  There was evidence of an old mild compression fracture in the low thoracic spine with prominent bridging osteophytes at T11-12 and T12-L1.  (Tr. 196).

Plaintiff continued to receive treatment at the Grant Medical Center out-patient clinic.  When examined on February 23, 2006, plaintiff complained of left knee pain and shortness of

breath. It was noted that he had been out of medication for a few days due to traveling out of state to a funeral. (Tr. 200).

On March 24, 2006, plaintiff reported that he had been out of medication for two weeks after having his medications stolen. Examination revealed his lungs to be clear to auscultation with no rales or wheezes. The heart had a normal rate and rhythm. (Tr. 201-02).

On August 22, 2006, plaintiff complained of sharp foot pain. There was mild swelling around the ankles but no numbness or tingling. His diabetes was described as uncontrolled due to being off medication. (Tr. 203-05).

## IV. The Expert Testimony

In addition to the plaintiff, a medical expert, Dr. Garling, testified at the administrative hearing. Dr. Garling testified that plaintiff suffers from chronic heart failure with cardiomegaly, non-insulin dependent diabetes mellitus, degenerative joint disease in the spine with arthritis, congenital stenosis of the lumbar spine, hypertension, possible neuropathy in the feet, status post gunshot wound to chest, alcohol abuse, substance abuse, personality disorder, and depressive disorder. (Tr. 269-71). However, plaintiff did not have an impairment that met or equaled the Listings. (Tr. 269). Dr. Garling believed that plaintiff could lift 10-15 pounds frequently and 20-25 pounds occasionally during an eight-hour workday. Plaintiff could sit and/or stand without limitation. He could walk frequently for two to three minutes at a time for one block before needing to rest for a few minutes. He could bend without limitation. He could periodically climb one flight of stairs, but never climb ladders. Dr. Garling concluded that Plaintiff would be precluded from work involving extremes of cold, high heat, and high humidity. (Tr. 277-84).

A vocational expert, Ms. Kaufman, also testified at the administrative hearing. The ALJ posed a hypothetical question to Ms. Kaufman describing someone of plaintiff's age, education, and past work experience, with the physical limitations described by the medical expert at the hearing, and the mental limitations identified by Dr. Virgil. (Tr. 287). Ms. Kaufman also was asked to assume that plaintiff was illiterate. Id. Ms. Kaufman testified that such an individual could not perform plaintiff's past relevant work, but could perform 8,000 jobs at the light work level such as packer, assembler and laundry worker, and 700 jobs at the sedentary level, all within the regional area. (Tr. 288-89).

V. The Commissioner's Decision

Based on the above evidence, the Commissioner found that plaintiff suffered from severe impairments including chronic heart failure with cardiomegaly, non-insulin dependent diabetes mellitus, degenerative joint disease in the spine with arthritis, hypertension, status post gunshot wound to the chest, alcohol abuse, personality disorder, depressive disorder, borderline intellectual functioning, and history of cocaine abuse. As a result of these impairments, plaintiff had the residual functional capacity to lift 10-15 pounds frequently and 20-25 pounds occasionally. He could sit and/or stand without limitation and walk frequently for two to three minutes at a time for one block before needing to rest for a few minutes. He could bend without limitation and could periodically climb one flight of stairs, but never climb ladders. He was precluded from work involving extremes of cold, heat, or high humidity. He could perform unskilled work activity in a work environment with minimal social interaction demands, but would be able to cooperate with supervisors and co-workers in a work setting

-8-

commensurate with his ability level.  The Commissioner also found
that plaintiff was "closely approaching advanced age," that he
"has a limited education and is illiterate," and that he has no
transferable work skills.  With these restrictions, although
plaintiff could not perform his past relevant work, the
Commissioner, relying both on Rule 202.11 of the Medical-
Vocational Guidelines and the vocational expert's testimony,
found that plaintiff could perform approximately those jobs
identified by the vocational expert.  As a result, he was not
entitled to a finding of disability.

VI.  Legal Analysis

In his statement of errors, plaintiff raises two issues.  He
argues that the Commissioner erred by using Rule 202.11 instead
of 202.09 of the Medical-Vocational Guidelines as a framework for
decision-making.  Second, he contends that the Commissioner erred
in finding that 8,000 jobs was a significant number of jobs.  To
the extent that plaintiff argues that the Commissioner's decision
is not supported by substantial evidence, that contention is
evaluated under the following standard.

Standard of Review.  Under the provisions of 42 U.S.C.
Section 405(g), "[t]he findings of the Secretary as to any
fact, if supported by substantial evidence, shall be
conclusive. . . ."  Substantial evidence is "'such relevant
evidence as a reasonable mind might accept as adequate to
support a conclusion'" Richardson v. Perales, 402 U.S. 389,
401 (1971) (quoting Consolidated Edison Company v. NLRB, 305
U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"
Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).
The Secretary's findings of fact must be based upon the record as
a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985);
Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley

-9-

v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Secretary's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Secretary's decision must be affirmed so long as his determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

Plaintiff's first assignment of error deals with the Commissioner's decision to use Rule 202.11 of the Medical-Vocational Guidelines as a framework for decision-making. That Rule, applicable to claimants who are limited to the performance of light work, describes a person who is closely approaching advanced age, has no transferable job skills (even if the claimant's past relevant work was skilled or semi-skilled), and whose education is "limited or less." If plaintiff met these criteria precisely, the Rule would direct a conclusion of "not disabled." Because he had additional limitations, the Commissioner did not rely totally on the Rule, but took into account the vocational testimony concerning plaintiff's ability to perform substantial gainful activity.

Rule 202.09, on the other hand, applies to claimants who differ from those described in Rule 202.11 in two respects. First, the description of previous work experience in Rule 202.09 is "unskilled or none." Second, the description of education is "Illiterate or unable to communicate in English." Plaintiff argues that because his work skills are not transferable, they

-10-

are deemed to be the equivalent of "unskilled or none," and that he should have been treated as illiterate because the Commissioner made the specific finding that "The claimant has a limited education and is illiterate...." (Tr. 22). If this Rule were applied, it directs a finding of "disabled" without the need to consider additional evidence from a vocational specialist.

The Commissioner's response to this argument is not entirely clear. The Commissioner notes, first, that plaintiff did perform one semi-skilled job in the past. Perhaps this statement is meant to suggest that he should not have been considered to have only unskilled or no prior work experience. However, plaintiff argues that, under other regulations, someone with no transferable job skills is to be treated the same as someone who has only done unskilled work in the past. See 20 C.F.R. §404.1565 (a) ("If you cannot use your work skills in other skilled or semi-skilled work, we will consider your work background the same as unskilled"). The Commissioner does not specifically address this argument, and the Court finds the plaintiff's position on this issue persuasive.

The more crucial issue is the question of illiteracy. The Commissioner spends a considerable amount of time arguing that the important finding made, for purposes of applying the Medical-Vocational Guidelines, was the finding that plaintiff had a limited education. The Commissioner then points to portions of the record suggesting that plaintiff may be able to read and write to some extent, and that he is therefore not to be considered as illiterate.

The problem with this argument is two-fold. First, although the Commissioner did make a finding that plaintiff had a limited education, that was immediately followed by a finding that he is functionally illiterate. The vocational expert was specifically

-11-

asked to consider the plaintiff to be illiterate.  Thus, the
Commissioner apparently made both findings, and cannot argue here
that one is controlling over the other.

Second, the administrative decision did not cite to those
portions of the record alluded to in the Commissioner's
memorandum as evidence that the plaintiff might have been
somewhat literate.  Apparently, the Administrative Law Judge did
not perceive the conflict between the two findings he made, and
his decision does not offer any rationale for choosing Rule
202.11 rather than Rule 202.09 as the more applicable guideline.
Interestingly, Rule 202.10 appears to offer some middle ground
between illiterate and literate (the education of the person
described in that Rule is "limited or less - at least literate
and able to communicate in English"), but that Rule was not
discussed, either.  The Court is therefore left with an
administrative decision that makes two different, and potentially
irreconcilable, decisions about a factor that dictates what Rule
is chosen, but which does not discuss that issue.  Given that one
of the two choices of Rules would seem to mandate a finding of
disability, the Court simply cannot determine whether the
Commissioner had a substantial basis for choosing one over the
other.  A remand is therefore required.

Plaintiff's second argument is that the Commissioner erred
in finding that the number of jobs identified by the vocational
expert is not substantial.  He supports this argument by noting
that under some of the Medical-Vocational guidelines, claimants
who can perform at least 14,000 jobs can be considered to be
presumptively disabled.  Thus, he reasons that it is illogical
for the Commissioner to have concluded that someone who can
perform fewer jobs is not disabled.

The problem with this argument is that there appears to be

no legal authority to support it.  In this circuit, the test for evaluating whether a the number of jobs a claimant can perform is substantial is set forth in Hall v. Bowen 837 F.2d 272 (6th Cir. 1988).  How many jobs can be performed by persons who are presumptively disabled under the Medical-Vocational Guidelines is not one of the factors enumerated in Hall.  Rather, Hall requires the Commissioner, and the Court, to focus on such factors as the level of the claimant's disability, the reliability of both the vocational expert's and the claimant's testimony, the distance that the claimant can travel in order to obtain and hold employment, whether the jobs identified are isolated in nature, and the types and availability of work within the region. See also Born v. Secretary of HHS, 923 F.2d 1168, 1174 (6th Cir. 1990).  The Court concludes that no error was committed here with respect to the Commissioner's finding that there are a substantial number of jobs that plaintiff can perform.  Thus, the only issue to be decided on remand is which of the Guidelines should be applied to this case.

### VII.  Recommended Disposition

For the foregoing reasons, it is recommended that the plaintiff's statement of errors be sustained and that this case be remanded to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four for further consideration of which Medical-Vocational Guideline properly applies to this case.

### VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo

determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).


/s/ Terence P. Kemp
United States Magistrate Judge